# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. YEO, Minor.

UNPUBLISHED
November 12, 2015

No. 326619
Kent Circuit Court
Family Division
LC No. 12-051539-NA

Before: STEPHENS, P.J., and CAVANAGH and MURRAY, JJ.

PER CURIAM.

Respondent mother appeals as of right an order terminating her parental rights to the minor child, A.Y., under MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions that led to adjudication) and (g) (failure to provide proper care and custody). We affirm.

Respondent argues that the trial court erred in finding that a statutory ground for termination was proved. We disagree. "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). The trial court's determination is reviewed for clear error. *Id.*; MCR 3.977(K). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed[.]" *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013).

The trial court did not clearly err in finding that MCL 712A.19b(3)(c)(*i*) was proved by clear and convincing evidence. That statute provides that a trial court may terminate parental rights if it finds, by clear and convincing evidence, that "[t]he parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and . . . [t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." Here, the trial court entered an initial dispositional order on July 5, 2012. The termination hearing was ultimately held on March 9 and 11, 2015, respectively. Thus, at the time of the termination hearing, far more than 182 days had elapsed since the issuance of the initial dispositional order.

There were several issues leading to adjudication in this case, but the primary issue was respondent's history of substance abuse. DHS identified that respondent had a substance abuse problem at the outset of the case when it interviewed her at the Kent County jail on May 17, 2012. At that time, respondent was being held on charges of retail fraud. She acknowledged to DHS that she was addicted to prescription drugs (namely, Vicodin, but also Methadone and

-1-

Xanax), and that this prescription drug habit was the impetus for her arrests; that is, she was stealing in order to support her habit. Respondent also admitted to smoking marijuana occasionally. She admitted that she needed help to address her substance abuse issue. Because respondent was in jail—and ultimately prison—when these proceedings were first initiated, her caseworker could do little more than provide respondent with homework assignments to complete in prison while also encouraging her to participate in any services available to her that would address the issue.

By all accounts, respondent's efforts to address her substance abuse problem while in prison were commendable. She participated in a substance abuse assessment, completed all homework assignments sent to her by her caseworker, participated in AA/NA meetings, completed "phase 1" of a substance abuse program, worked independently on a workbook addressing addiction, met with counselors, participated in medication reviews, and secured an AA/NA sponsor to assist with her sobriety upon her release. Multiple times during the first 19 months of these proceedings, caseworkers testified that respondent was doing everything she could from prison to address her substance abuse issue.

Likewise, by all accounts, respondent "hit the ground running" when she was released from prison. First, she spent 30 days at an in-patient rehabilitation center, where she received intensive substance abuse treatment. Thereafter, upon being released into the community, she promptly followed her caseworker's referral for an assessment at Pine Rest, where she began group and individual counseling. She also continued medication reviews, AA/NA meetings, and meeting with her AA/NA sponsor. She continually tested negative for all controlled substances. Her progress in the first six months after being released from prison was so substantial that by June 2014, the agency had identified substance abuse as a "strength" for respondent and expressed that A.Y. could potentially be returned to her care in the immediate future. Simply put, respondent's progress, both in prison and during the first six months thereafter, was "stellar."

By July 2014, however, respondent's progress halted. Her work schedule changed, causing her significant stress and impacting her ability to spend time with A.Y. Moreover, her relationship with her brother and sister-in-law, with whom she had been living, dissolved, prompting her to move in with a "friend" who, by respondent's own admission, was a negative influence. She began to miss parenting time visits, which put a strain on her relationship with A.Y. and prompted her to express that she sometimes felt like she was not even A.Y.'s mother. The accumulation of this stress, coupled with the bad environment respondent put herself in, led to her first relapse in July 2014. Specifically, on July 25 and August 4, 2014, respectively, respondent tested positive for both cocaine and marijuana. Likewise, she missed a drug screen on August 2, 2014, which was considered positive by the agency. Respondent's use of cocaine was alarming to the agency, inasmuch as cocaine had never been identified as a problem for her.

Respondent seemingly took full responsibility for her relapse with cocaine and marijuana. However, she did not admit to her caseworker that she had also relapsed on prescription drugs. It was not until the results of an August 2014 hair follicle test were later shown to respondent that she finally admitted she had also been using Vicodin again. In any event, respondent re-engaged in substance abuse counseling, this time at Arbor Circle. However, while she participated sporadically with this service as well as the occasional AA/NA meeting for the

remainder of these proceedings, respondent continued to test positive for controlled substances. For instance, on October 17, 2014, she tested positive for opiates. Then, on January 6, 2015, respondent tested positive for cocaine.[1] And, while she vigorously disputed the results of the latter drug test, her explanation for the results was almost equally alarming: she claimed that she was engaging in sexual intercourse with a known cocaine user.

At the time of the March 2015 termination proceedings, the last concrete evidence of respondent's drug use was the January 6, 2015 test noted above. In addition, however, the trial court heard evidence that respondent had recently missed four drug screens, all of which were considered positive by the agency. Respondent's excuse for missing the first screen—on December 27, 2014—was that she overslept. And, while respondent had an excuse for missing the January 23, 2015 screen—she was incarcerated—she offered no excuses for missing the latter two, and instead informed her caseworker that she had simply "given up." Moreover, the trial court heard evidence that respondent had failed to attend counseling services at Arbor Circle between January and February. Finally, the trial court heard evidence that respondent was now dating the cocaine user with whom she had previously engaged in sexual intercourse.

Based on all of the above evidence, the trial court did not clearly err in finding that respondent's substance abuse issue—a condition of adjudication and the only significant barrier to reunification remaining in this case—had not been rectified. Undoubtedly, respondent "embarked on a commendable effort to treat her addiction," *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009), but was simply unable to rid herself of that problem. Likewise, given the lengthy history of respondent's substance abuse problem, her recent relapses, and the fact that she continued associating with known drug users, the trial court did not clearly err in finding that she would not rectify her substance abuse issue within a reasonable time.

In support of her argument on appeal, respondent cites *In re LaFrance*, 306 Mich App 713, 731; 858 NW2d 143 (2014), for the proposition that her drug abuse issue, standing alone, could not support termination of her parental rights where she had demonstrated adequate parenting skills and progress in all other areas of her treatment plan. However, respondent's reliance upon this case is misplaced. In that case, a panel of this Court held that "drug use alone, in the absence of any connection to abuse or neglect, cannot justify termination solely through operation of the doctrine of anticipatory neglect." *Id*. Here, however, the trial court was not merely speculating that A.Y.'s health, well-being, and stability might be placed in jeopardy by respondent's future drug abuse. Rather, there was a documented history of drug abuse which affected respondent's ability to care for A.Y., as reflected by the fact that she spent

---

[1] The record indicates that respondent also tested negative for all controlled substances in a test administered by her parole agent the same day. On appeal, respondent argues that the trial court erred in giving more weight to the positive test than it did to the negative test. We disagree. There was ample evidence in the record to suggest that the positive test administered by the agency was more reliable than the "field test" conducted by respondent's parole agent. Moreover, even the test administered by the parole agent, which was technically "negative," indicated that she did in fact have traces of cocaine and other drugs in her system.

approximately two years in prison and was never able to have A.Y. returned to her care thereafter because of her continuing drug abuse. There was no clear error.

Because we find that the trial court did not clearly err in terminating respondent's parental rights under MCL 712A.19b(3)(c)(*i*), we need not address the additional ground. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

Respondent next argues that the trial court clearly erred by finding that termination of her parental rights was in A.Y.'s best interests. We disagree. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). See MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. The trial court's finding in this regard is reviewed for clear error. MCR 3.977(K); *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000).

The record in this case contained sufficient evidence to support the trial court's best-interest determination. The simple fact is that this case lingered in the trial court for almost three years so that respondent could be provided an opportunity to address her prescription drug problem and demonstrate that she could be a stable presence in A.Y.'s life. Not only was respondent unable to do so, but she introduced *new* drugs into her lifestyle and began a romantic relationship with a known drug user. At the time of termination, 3-1/2-year-old A.Y. had already spent almost her entire life outside of respondent's care. Given the length of time respondent had struggled with addiction and her recent relapses even after substantial services, it was doubtful whether A.Y. could be returned to her care in the foreseeable future, if at all. See *In re Frey*, 297 Mich App 242, 249; 824 NW2d 569 (2012). It simply would not have been fair to A.Y. to continue to deprive her of the permanence, stability, and finality that she desperately needed, but which respondent could not provide. On the other hand, A.Y. was being well-cared for in her foster home, and her foster parents expressed an interest in adoption. Given these circumstances, the trial court did not clearly err in finding that termination was in A.Y.'s best interests.

In reaching this conclusion, we reject respondent's claim that the trial court clearly erred in finding the child's well-being in the foster home as a neutral factor in deciding best interests. The argument fails to recognize that A.Y. was placed in a foster home that was not the subject of a prior sexual abuse investigation, or that her current foster parents were considering adopting her.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Mark J. Cavanagh
/s/ Christopher M. Murray